Rafey Balabanian (SBN – 315962)
rbalabanian@edelson.com
Lily Hough (SBN – 315277)
lhough@edelson.com
Brandt Silver-Korn (SBN – 323530)
bsilverkorn@edelson.com
123 Townsend Street, Suite 100
San Francisco, California 94107
Telephone: 415.212.9300
Facsimile: 415.373.9435

*Counsel for Plaintiff and the Putative Class*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOWARD SMUKLER, individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>JPMORGAN CHASE BANK, N.A., an Ohio corporation, and JPMORGAN CHASE & CO., a New York corporation,<br><br>*Defendants.* | Case No.<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>**(1) Declaratory Judgment**<br>**(2) Breach of Contract, Third-Party Beneficiary**<br>**(3) Unjust Enrichment**<br>**(4) Violation of Cal. Bus. & Prof. Code § 17200, *et seq.***<br><br>**DEMAND FOR JURY TRIAL** |

### CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Howard Smukler ("Smukler" or "Plaintiff") brings this Class Action Complaint and Demand for Jury Trial against Defendants JPMorgan Chase Bank, N.A. ("Chase Bank") and JPMorgan Chase & Co. ("JPMorgan[,]" and together with Chase Bank, "Defendants"), to seek compensation from Defendants, who refuse to pay for services Smukler and countless other agents rendered on behalf of recipients of Small Business Administration ("SBA") emergency loans. Plaintiff alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief.

CLASS ACTION COMPLAINT

**NATURE OF THE ACTION**

1.      In the past two months, COVID-19 has destroyed national commerce and shuttered countless businesses across virtually all sectors. Responding to mass layoffs occurring around the country, Congress created a program that would quickly distribute money to small businesses, like Plaintiff's client, on a first-come, first-served basis.

2.      Congress understood that in order to encourage small businesses to timely file accurate applications, many would need to turn to the nation's ranks of accountants, tax preparers, financial advisors, attorneys, and the like. These "agents" serve a critical role in the functioning of our financial system, and in many cases, themselves, are small businesses trying to survive the current financial crisis.

3.      Congress's plan to aid small businesses was enacted into law on March 27, 2020. In its initial form, the SBA's Paycheck Protection Program ("PPP") authorized up to $349 billion in forgivable loans to small businesses to cover payroll and other expenses. Since that date, several hundred billion additional dollars have been added to the program after the initial funds ran dry.

4.      Speed and straightforwardness were supposed to be the hallmarks of the PPP. Businesses would apply through SBA-approved lenders as soon as the application window opened, get in line, and wait their turn to be approved. Once that process was complete, lenders would get their share, in the form of an origination fee—with the caveat that they would be responsible for paying the fee owed to the loan applicant's agent (*e.g.*, their attorney or accountant).

5.      Defendants are multi-trillion dollar banking entities that have, since the launch of the PPP, collectively approved hundreds of thousands of PPP applications worth over $29 billion. They have, accordingly, been allocated—or will be allocated—hundreds of millions of dollars in origination fees.

6.      However, Defendants apparently decided that they need not complete the final step of the process and refused to pay agents who assisted PPP loan recipients with their applications. This refusal is harming countless accountants and attorneys around the country, and is in blatant

1   violation of PPP regulations stating that agent fees "will be paid by the lender out of the fees the
2   lender receives from SBA."

3       7.      These agents, like and including Plaintiff, have no other option for collecting fees on
4   PPP loan applications they assisted in preparing because SBA regulations provide that "[a]gents
5   may not collect fees from the borrower or be paid out of the PPP loan proceeds." Thus, lenders
6   *alone* are responsible for paying agents. Defendants refuse to do so, despite this.

7       8.      As a result of Defendants' acts and omissions, Plaintiff and countless others like him
8   are being deprived of payment for their critical work in processing PPP loan applications. As such,
9   Plaintiff brings this Class Action Complaint and Demand for Jury Trial in order to vindicate his
10  rights, and those of agents everywhere who are similarly situated, and to hold Defendants
11  accountable.

12                                  **PARTIES**

13      9.      Plaintiff Howard Smukler is a natural person and a citizen of the State of California.

14      10.     Defendant JPMorgan Chase Bank, N.A. is a company and subsidiary of JPMorgan
15  Chase & Co., with its principal place of business located at 1111 Polaris Parkway, Columbus, Ohio
16  43240. Chase Bank conducts substantial business throughout this District and the State of
17  California, and throughout the United States.

18      11.     Defendant JPMorgan Chase & Co. is a Delaware corporation whose primary place of
19  business is 270 Park Avenue, New York City, New York 10017.

20                          **JURISDICTION AND VENUE**

21      12.     This Court has subject matter jurisdiction over Plaintiff's claims under 28 U.S.C. §
22  1332(d)(2) because, as to the proposed Class and Subclasses, (a) at least one member of the Class,
23  which consists of at least 100 members, is a citizen of a different state than Defendants, (b) the
24  amount in controversy exceeds $5,000,000, exclusive of interest and costs, and (c) none of the
25  exceptions under that subsection apply to this action.

26

27

28  CLASS ACTION COMPLAINT                        3

13.     This Court has personal jurisdiction over Defendants because they transact business in this State, and because the tortious conduct alleged in this Complaint occurred in, was directed to, and/or emanated from this State.

14.     This Court has jurisdiction to grant declaratory relief under 28 U.S.C. § 2201 because an actual controversy exists between the parties as to their respective rights and obligations under 85 Fed. Reg. 20816 § (4)(c) (hereinafter, the "PPP regulations").

15.     Venue is proper in this District under 28 U.S.C. § 1391 because Defendants conduct business transactions in this District, and because the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District, including from work performed by Plaintiff on behalf of a business client within this District.

16.     **Intradistrict Assignment.** The client of Plaintiff's whose PPP loan application is at issue in this matter is based in Berkeley, California, which is in Alameda County. As such, this matter is properly assigned to the San Francisco or Oakland Division pursuant to Civil L.R. 3-2(d).

**FACTUAL BACKGROUND**

17.     On March 11, 2020, the COVID-19 outbreak was designated as a pandemic by the World Health Organization ("WHO"). President Trump followed suit on March 13, 2020, declaring the pandemic of sufficient severity to warrant an emergency declaration for all States, territories, and the District of Columbia.

18.     This economic fallout from COVID-19, and the national response to it, was immediate and enormous. Countless businesses in "stay at home" order states across the nation were forced by law to overhaul their business models, scale back their business dramatically, or shutter—either temporarily or permanently. Foot traffic in all businesses also took a sharp downturn as the public began to avoid public spaces of all types, further harming businesses' abilities to stay afloat. Furloughs and layoffs were rampant in the private sector.

19.     The federal government faced overwhelming public pressure to respond to this national economic disaster, with the knowledge that time was of the essence to prevent further disruption. As such, on March 27, 2020, President Trump signed the Coronavirus Aid, Relief, and

1   Economic Security Act ("CARES Act") into law. Amounting to approximately $2 trillion, the

2   CARES Act was the single-largest economic stimulus bill in American history.

3       20.     Critically, the CARES Act created a $349 billion loan program for businesses with

4   fewer than five hundred employees: the PPP. The goal of the PPP was to provide American small

5   businesses with eight weeks' worth of funds to assist in covering payroll, rent, and benefits, through

6   fully federally guaranteed loans administered by the SBA.[1]

7       21.     Really, PPP loans operate more like grants if the recipient is able to follow certain

8   rules, including that at least 75 percent of the loan goes toward payroll.[2] Businesses that follow the

9   rules are permitted to submit a request to their SBA lender for total forgiveness—otherwise, the

10  loan matures in two years and carries a 1 percent interest rate.[3]

11      22.     The SBA was charged with creating the PPP implementing regulations. It issued the

12  first interim final rule ("Initial Rule") on April 2, 2020, and the window for businesses to begin

13  applying for PPP loans was to open with all SBA-affiliated lenders on April 3, 2020.

14      23.     A key piece of the PPP was that applications be opened and funds be distributed on a

15  "first-come, first-served" basis—that is, SBA was to process applications and distribute funds based

16  on the order in which they were received. This made the SBA's list of approved lenders key

17  gatekeepers in this process, by extension, as the lenders certainly understood. Because the PPP was

18  to be administered only through SBA-approved lenders, and because applicants could only access

19  funds from the single pot of funds allocated for the program (unless it was replenished), submitting

20  an accurate application for a loan through an SBA-approved lender quickly and properly would be

21  critical.

22      24.     Knowing that SBA-affiliated lenders would face a crush of applications for PPP

23  loans, Congress added a carrot to the stick: for each loan processed and approved, the bank would

24

25  _____

    [1]     Small Bus. Admin., Docket No. SBA-2020-0015, 13 CFR Part 120, Paycheck Protection
26  Program 3245–AH34, Interim Final Rule, 85 Fed. Reg. 20814 § (2)(o) (Apr. 15, 2020).

27  [2]     85 Fed. Reg. 20812 § (2)(e); *id.* at 20813 § (2)(o).

28  [3]     *Id.* at 20813 § (2)(j).

    CLASS ACTION COMPLAINT            5

1   receive an origination fee of 5 percent on loans up to $350,000; 3 percent on loans between

2   $350,000 and $2 million; and 1 percent on loans between $2 million and $10 million.

3           25.     With similar incentives in mind, Congress and the SBA also took pains to carve out a

4   specific benefit for the countless accountants, attorneys, and advisors who, no doubt, would need to

5   assist their clients (if not take the lead) in preparing and filing PPP loan applications. These

6   individuals and entities are referred to as "agents" in the CARES Act and PPP implementing

7   regulations.

8           26.     As explained in an Information Sheet provided for "lenders," the SBA says that an

9   "agent is an authorized representative and can be" an "attorney[,]" "accountant[,]" "consultant[,]"

10  "[s]omeone who prepares an applicant's application for financial assistance and is employed and

11  compensated by the applicant[,]" "[s]omeone who assists a lender with originating, disbursing,

12  serving, liquidating, or litigating SBA loans[,]" "loan broker[s,]" or "[a]ny other individual or entity

13  representing an applicant by conducting business with the SBA."[4]

14          27.     On the subject of agent fees, the SBA's regulations provide as follows, in full:

15
16          c. Who pays the fee to an agent who assists a borrower?

17          Agent fees will be paid by the lender out of the fees the lender
            receives from SBA. Agents may not collect fees from the borrower or
18          be paid out of the PPP loan proceeds. The total amount that an agent
            may collect from the lender for assistance in preparing an application
19          for a PPP loan (including referral to the lender) may not exceed:

20          i.      One (1) percent for loans of not more than $350,000;
            ii.     0.50 percent for loans of more than $350,000 and less than $2
                    million; and
21          iii.    0.25 percent for loans of at least $2 million.

22          The Act authorizes the Administrator to establish limits on agent fees.
            The Administrator, in consultation with the Secretary, determined that
23          the agent fee limits set forth above are reasonable based upon the
            application req[]uirements and the fees that lenders receive for
24          making PPP loans.

25
_____

26  [4]     U.S. Dep't of Treasury, *Paycheck Protection Program (PPP) Information Sheet Lenders*,
    https://home.treasury.gov/system/files/136/PPP%20Lender%20Information%20Fact
27  %20Sheet.pdf (last visited May 19, 2020).

28  CLASS ACTION COMPLAINT                          6

85 Fed. Reg. 20816 § (4)(c).

28.    Thus, Congress and the SBA set up a straightforward system for the disbursement of PPP loan funds where the applicant is assisted by an agent: (i) the agent prepares the application and/or necessary application documents for the client, pursuant to a fee agreement; (ii) the client applies for the PPP loan through the lender; (iii) the lender submits the application to the SBA; (iv) the SBA approves the loan and sends the client the money through the lender, and eventually pays the lender its origination fee; and (v) the agent submits the request for fee payment to the lender, with the agent's fee being based on (a) the work performed under the fee agreement referenced in step (i), and (b) the caps on agent fees provided by the SBA's PPP regulations.

29.    Unfortunately, Defendants have decided to make this system straightforward in a different way: by refusing to pay agent fees altogether before they even have a chance to be claimed.

30.    This might come as a surprise to someone who takes a look at their website, where Defendants promise that "[i]f an agent assists the borrower, the lender will compensate the agent out of the fee it receives from the SBA, at a rate of 0.25%-1% of the loan amount, depending on its size."[5]

31.    That is not the case. Defendants are wholly refusing to pay the fees of agents who have timely contacted them requesting to be reimbursed, or requesting information on how to seek reimbursement.

32.    Upon information and belief, this refusal is a company-wide policy not to reimburse *any* agent fees *other than* those incurred by individuals or entities hired directly by Defendants to assist with the PPP loan application process.

33.    This policy is a curious one for Defendants to have. It is not clear that they have even been paid most or any of the origination fees due to them being under the SBA's regulations. Nevertheless, this outright refusal to pay agents the fees due to them—and, to be clear, the fees that

---

[5]    J.P. Morgan Private Bank, *Small Business Owners: CARES Act FAQ* (May 14, 2020), https://privatebank.jpmorgan.com/gl/en/insights/planning/small-business-owners-cares-act-faq.

1    *only* the lenders are authorized to pay—stands as an immediate threat to these agents' abilities to

2    receive payment for their services. In the middle of a pandemic-*cum*-economic crisis, this represents

3    short-sighted profit-padding, at best, and blatantly illegal conduct, at worst.

4          34.      Defendants' position is made stranger still by the agreements they entered into to

5    become approved PPP lenders. Specifically, Defendants would likely have been required to fill out

6    and sign the "CARES Act Section 1102 Lender Agreement."[6] This document requires each putative

7    PPP lender to certify, under penalty of perjury, that it (i) "is in compliance and will maintain

8    compliance with all applicable requirements of the [PPP], and PPP Loan Program Requirements[,]"

9    (ii) will "service and liquidate all covered loans made under the Paycheck Protection Program in

10   accordance with PPP Loan Program Requirements[,]" and (iii) will "close and disburse each

11   covered loan in accordance with the terms and conditions of the PPP Authorization and PPP Loan

12   Program Requirements."

13         35.      Defendants' wholesale refusal to pay third-party agent fees directly violates the

14   PPP's implementing regulations. Thus, to the extent Defendants had to certify, at any point, that

15   they would follow the PPP's regulations in making PPP loans, they were not being truthful—or at

16   minimum, were deeply disingenuous.

17         36.      It is pursuant to these representations that Chase Bank has been allowed to process

18   well over 200,000 PPP loan applications since the beginning of April 2020, securing approximately

19   $29 billion in funding for loan recipients. Even at the lowest rate of recovery (1 percent) for these

20   loans, Chase Bank will easily be eligible to receive over $290 million in origination fees.

21         37.      Assuming even one-fifth of Chase Bank's origination fees constitute fees owed to

22   third-party agents, this would amount to $58 million that Chase Bank is pocketing while agents like

23   and including Plaintiff are left with nothing.

24

25   _____

26   [6]    U.S. Small Bus. Admin., *CARES Act Section 1102 Lender Agreement*,  https://www.sba.gov/
     sites/default/files/2020-04/PPP--Agreement-for-New-Lenders-Banks-Credit-Unions-FCS-w-seal-

27   fillable.pdf (last accessed May 19, 2020).

28

**PLAINTIFF SMUKLER'S EXPERIENCE**

38.     Howard Smukler is a California attorney.

39.     Smukler, through his practice, and as a part of his representation of a client in the San Francisco Bay Area for the past 20 years, was asked to provide substantial assistance in the client's preparation and filing of a PPP loan application. This application was critical to the survival of the client's business.

40.     A retainer agreement between Smukler and his client to provide for these services was executed.

41.     Smukler thoroughly assisted in preparing the necessary documentation for the client's PPP loan application. Despite the long and at-times confusing process, the application was submitted to Defendant Chase Bank for approval. Smukler signed the application on his client's behalf, and indicated in the signature block that he was an attorney for the applicant.

42.     About one month later, the client's application was approved in the amount of $172,825.00.

43.     Pursuant to PPP regulations, Defendant Chase Bank would be entitled to receive $8,641.00 from the SBA in origination fees, of which one-fifth (*i.e.*, one percent of the total loan) would have to be paid to Smukler for his work as an agent on the PPP loan application. Thus, Smukler was—and remains—owed $1,728.00 for his work.

44.     Smukler was ecstatic that his client received its full loan amount from the SBA. Thereafter, he sought to collect his fees, but SBA regulations *prohibited* him from collecting from his client.

45.     Accordingly, Smukler reached out to Chase Bank through his local bank branch about how to obtain his agent fees. He was directed to apply online, but no application portal existed. No email or phone number was provided to communicate with Defendants to address this issue.

46.     Eventually, Smukler made contact with two regional Vice Presidents for Chase Business Banking. Neither one could confirm that Smukler could, or ever would, be paid the agent fees due to him for his work on his client's PPP loan application.

47.     Indeed, one of the Vice Presidents went so far as to say that "I just checked our policy and escalated your question to our Regional president" on a Monday morning "conference call." The Vice President then said that "it's confirmed that we are making the loan directly to our clients and not involving Third Parties (attorneys, CPA's, loan brokers etc.) therefore not paying third party fees."

48.     Further, the Vice President elaborated that "[t]here's no place to send invoices" for agent fees, "as Chase is lending directly to clients and not using Third Parties for PPP process."

49.     The Vice President also said that any issues regarding Smukler's agent fee was "between you and your clients" alone.

50.     Thus, Defendants have enacted a company-wide policy—and discussed it on a conference call—that SBA "agents" who assist in the PPP loan application process on their clients' behalf (including Plaintiff) are entitled to nothing, and will receive nothing.

51.     To date, Plaintiff has not received a penny for his substantial work on his client's PPP loan application. And if Defendants get their way, he never will. All of his potential routes for payment—his client, Defendants, PPP funds, SBA—have been closed off.

## CLASS ALLEGATIONS

52.     **Class Definition:** Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23 on behalf of himself and the Class defined as follows:

> All persons and businesses who served as an agent in relation to, and provided assistance to a client in relation to, the preparation and/or submission of a client's PPP loan application to Chase Bank.

Plaintiff further brings this action on behalf of a subclass of individuals defined as follows:

> **California Subclass.** All persons and businesses in California who served as an agent in relation to, and provided assistance to a client in

relation to, the preparation and/or submission of a client's PPP loan application to Chase Bank.

Excluded from the Class and Subclass (hereafter "the Class" unless otherwise indicated) are: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which Defendants or its parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendants' counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

53.     **Numerosity:** The exact number of members of the Classes is unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable. On information and belief, Defendants have refused to reimburse thousands of agents like and including Plaintiff.

54.     **Commonality and Predominance:** There are many questions of law and fact common to the claims of Plaintiff and the putative Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to, the following:

  a.   Whether Defendants' conduct violates the CARES Act and/or its implementing regulations;

  b.   Whether Defendants are required to compensate Plaintiff out of the origination fees obtained from the SBA through the PPP;

  c.   Whether Plaintiff is entitled to compensation by Defendants for his work assisting in his client's PPP loan application;

  d.   Whether Defendants' conduct was willful and knowing;

  e.   Whether Defendants' conduct was pursuant to a company-wide policy or policies; and

  f.   Whether Defendants' conduct constitutes unjust enrichment.

55.    **Typicality:** Plaintiff's claims are typical of the claims of other members of the Class, in that Plaintiff and members of the Class sustained damages arising out of Defendants' uniform wrongful conduct.

56.    **Adequate Representation:** Plaintiff will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in complex litigation and class actions. Plaintiff's claims are representative of the claims of the other members of the Class. That is, Plaintiff and members of the Class sustained damages as a result of Defendants' uniform conduct. Plaintiff also has no interests antagonistic to those of the Class, and Defendants have no defenses unique to Plaintiff. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiff nor his counsel have any interest adverse to the Class.

57.    **Policies Generally Applicable to the Class:** This class action is appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward members of the Class, and making final injunctive relief appropriate with respect to the Class as a whole. Defendants' practices challenged herein apply to and affect members of the Class uniformly, and Plaintiff's challenge of those practices hinges on Defendants' conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

58.    **Superiority:** This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy given that joinder of all parties is impracticable. The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendants' misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies

1   presented in this Complaint. By contrast, a class action presents far fewer management difficulties

2   and provides the benefits of single adjudication, economy of scale, and comprehensive supervision

3   by a single court. Economies of time, effort, and expense will be fostered and uniformity of

4   decisions ensured.

5          59.    Plaintiff reserves the right to revise the foregoing "Class Allegations" and "Class

6   Definition" based on facts learned through additional investigation and discovery.

**FIRST CAUSE OF ACTION**
**DECLARATORY JUDGMENT**

9          60.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

10         61.    Plaintiff and the Class represent individuals who are "agents" as defined by SBA

11   regulations for the PPP.

12         62.    Plaintiff and the putative Class have assisted their clients with the process of

13   preparing applications, and applying, for PPP loan funds. Defendants, despite the clear command of

14   the SBA's PPP regulations, have refused to make these payments at all, apparently claiming that

15   they are not required to pay "agents" unless hired by Defendants themselves.

16         63.    An actual controversy has arisen between Plaintiff and the Class, on one hand, and

17   Defendants on the other, wherein Defendants deny that they are obligated to pay Plaintiff's and the

18   Class's "agent" fees pursuant to PPP regulations.

19         64.    Plaintiff and the Class seek a declaration, in accordance with SBA regulations and

20   pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, that Defendants are obligated to set

21   aside money to pay, and pay third-party agents—within SBA-approved limits—for any work

22   performed on behalf of a client in relation to the preparation and/or submission of a PPP loan

23   application.

**SECOND CAUSE OF ACTION**
**BREACH OF CONTRACT, THIRD-PARTY BENEFICIARY**

26         65.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

28

66.     Plaintiff's and the putative Class's clients entered into a contract with Defendants for purposes of participating in the PPP.

67.     The agreements between these third-party clients and Defendants for the clients' loans, upon information and belief, required that Defendants would adhere to all PPP rules and regulations and incorporate these requirements by reference. Defendants and these clients also implicitly understood that agents involved in the preparation and submission of PPP loan applications would need to be compensated.

68.     The SBA's PPP regulations specifically require that PPP lenders pay the fees of any "agent" that assists with the PPP loan application process, within limits.

69.     These clients and Defendants understood that Plaintiff and the Class were intended beneficiaries of this agreement, as a result. Nevertheless, Defendants have refused to live up to their end of the bargain, and have uniformly refused to pay agent fees to Plaintiff or the Class.

70.     By refusing to pay agent fees in accordance with SBA regulations, Defendants are violating the terms of their agreement with Plaintiff's client—and all other PPP loan applicants who utilized an agent—and damaging Plaintiff and the Class thereby. Plaintiff thus asks the Court to award him damages sufficient to make him whole, and compensate him for his work preparing his client's PPP loan application, consequential damages, and all other damages available at law.

**THRID CAUSE OF ACTION**
**UNJUST ENRICHMENT**

71.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

72.     Unjust enrichment, or restitution, may be alleged where a Defendant unjustly obtains and retains a benefit to the Plaintiff's detriment, where such retention violates fundamental principles of equity, justice, and good conscience.

73.     Here, Defendants have obtained hundreds of millions of dollars in benefits—or soon will—in the form of PPP loan origination fees. A portion of those fees were to be paid to agents, like and including Plaintiff, who assisted in their clients' PPP loan applications. But Defendants are refusing to pay those fees, in contravention of PPP regulations.

74.     Principles of justice, equity, and good conscience demand that Defendants not be allowed to retain these agent fees. Defendants have fallen short in their duties as lenders, and during a crisis no less. As a result, Plaintiff and the putative Class have been unable to obtain the agent fees due to them.

75.     As such, Defendants must disgorge the portion of any and all PPP origination fees that they have retained to the extent they are due to Plaintiff and the putative Class in their capacities as agents.

### FOURTH CAUSE OF ACTION
### VIOLATION OF BUS. & PROF. CODE § 17200, *et seq.*
### (On Behalf of the California Subclass)

76.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

77.     Pursuant to Cal. Bus. & Prof. Code §17200, "any unlawful . . . business act or practice" is prohibited in the State of California. This statute creates a private right of action based on any unlawful act committed in the course of business, particularly where it provides the unlawful actor with an unfair business advantage. Local, state, and/or federal law can serve as the basis for an "unlawful . . . business act or practice[.]"

78.     The SBA's PPP regulations specifically provide that "lenders" who provide loans under the program will be responsible for paying "agent" fees, within prescribed limits.

79.     Defendants have uniformly refused to pay these fees to Plaintiff and the Class. As such, Defendants have engaged in unlawful conduct that has cost Plaintiff and the Class millions of dollars in fees, collectively.

80.     Defendants have also engaged in "unfair" business practices through this conduct, as well. Upon information and belief, many other PPP lenders have chosen to pay all—or at least some—of the agent fees owed to individuals and entities who, like Plaintiff and the Class, assisted in the preparation and submission of PPP loan application materials.

81.     By following the law, these other lenders have (rightfully) given up millions of dollars in origination fees to agents where Defendants have not. As such, Defendants have obtained

an unfair business advantage over other lenders—to the tune of tens of millions of dollars in fees—who chose to play by the rules.

82.     As a direct and proximate result of the foregoing acts and practices, Defendants have received, or will receive, income, profits, and other benefits, which they would not have received if they had not engaged in the violations of Section 17200 described in this Complaint.

83.     Because Plaintiff and the Class have been harmed by Defendants' unreasonable, unlawful, and unfair business practice of refusing to pay agents who assist in the preparation and submission of PPP loan application materials, Plaintiff asks that they be held liable for damages, be enjoined from further refusing to pay such agent fees, and that Plaintiff be awarded all other such damages and relief available at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Howard Smukler, individually and on behalf of the Classes, prays for the following relief:

(a)     An order certifying the Class as defined above, appointing Plaintiff as the representative of the Class, and appointing his counsel as Class Counsel;

(b)     An order declaring that Defendants' actions, as set out above, constitute unjust enrichment, breach of contract on behalf of third-party beneficiary, violate Cal. Bus. & Prof. Code § 17200, *et seq.*, and violate the SBA's PPP regulations;

(c)     An award of all economic, monetary, actual, consequential, compensatory, and punitive damages available at law and caused by Defendants' conduct, including without limitation actual damages for past, present, and future expenses arising from Defendants' misconduct, lost time and interest, and all other damages suffered, including any damages likely to be incurred by Plaintiff and the Class;

(d)     An award of reasonable litigation expenses and attorneys' fees;

(e)     An award of pre- and post-judgment interest, to the extent allowable;

(f)     The entry of an injunction and/or declaratory relief as necessary to protect the interests of Plaintiff and the Class; and

(g)     Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

Respectfully submitted,

**HOWARD SMUKLER,** individually and on behalf of all others similarly situated,

Date: May 20, 2020

By: /s/ Lily E. Hough
*One of Plaintiff's Attorneys*

Rafey Balabanian (SBN – 315962)
rbalabanian@edelson.com
Lily Hough (SBN – 315277)
lhough@edelson.com
Brandt Silver-Korn (SBN – 323530)
bsilverkorn@edelson.com
123 Townsend Street, Suite 100
San Francisco, California 94107
Telephone: 415.212.9300
Facsimile: 415.373.9435